Next case up is 416-0436. People v. Wagner. For the appellant is Attorney Manuela Hernandez. Did I pronounce correctly? That's correct. And for the appellee, David Manchin. Before we start, counsel, I just want to mention the court asked counsel to be ready a half hour beforehand so that if our schedule permits it, we can start early. You are both here and I thank you for that. And with that, you may proceed, Ms. Hernandez. Thank you and good afternoon. May it please the court, counsel? My name is Manuela Hernandez. I'm from the Office of the State Appellate Defender and I'm appearing on behalf of Mr. Christopher Wagner. Unless this court has any questions regarding Argument 3 of my opening brief, I'm going to focus my discussion today on Arguments 1, 2, and 4 of the opening brief. Now, the issues that are described in these arguments show critical errors by defense counsel that denied Mr. Wagner his due process right to a fair trial and to a fair sentencing hearing as well. First, we have counsel's failure to file a motion to suppress a statement that was made by Mr. Wagner to Detective Vanderbilt in violation of his Sixth Amendment right to counsel. Now, the record shows us that Mr. Wagner was arrested in connection with a string of crimes in January 4th of 2016. He was charged with only one of the counts, burglary, I believe, at the Wilco gas station. And on January 5th, he was arraigned and counsel was appointed to represent him. The very next day, Detective Vanderbilt went to the jailhouse and spoke to Mr. Wagner, deceived him into believing that he was not represented with respect to the remaining counts, and obtained a statement illegally in violation of Mr. Wagner's constitutional rights. So he was represented on all counts that he was questioned about? Well, all the counts, he was only indicted on one count, so he was only charged for the Wilco burglary on January 4th. However, all of these crimes were connected. The evidence that was obtained and the statement that was obtained from Mr. Wagner was used against him for all counts, and these were all counts that were put in the same indictment by the state. Now, the state does not dispute the fact that the statement was obtained in violation of Mr. Wagner's constitutional right, and the state also does not dispute the fact that if the attorney, defense counsel, had moved to suppress the statement, that the statement would have been suppressed. The question here is, under Strickland, whether counsel's inaction was strategic in any way, and whether the statements were prejudicial. Now, I submit to this court that there was no strategic reason for counsel not to move to suppress the statement, and it was a fundamental misjudgment on counsel's part. Now, the statement was used by the state as an admission. It was used by the state to connect Mr. Wagner to one of the scenes of the crime, which was the parking lot that was depicted in one of the videos. The statement was in no way exculpatory, as the state suggests in its response brief, or an alibi. The statement did not say that he did not commit the crimes. It just simply says that he does not remember, and it does not offer any alternative whereabouts, suggesting that it could be used as an alibi. So there was absolutely no reason for defense counsel not to move to suppress the statement. And under the Strickland test, defense counsel's performance fell below objective standards. Now, the second question is whether or not the statement was prejudicial, and again, I submit that it was. Without the statement, the statement was necessary to put Mr. Wagner at the scene of the crime. The evidence in this case was circumstantial. There were only videos. There were no witnesses. It was impossible to tell from the videos who the individual was, who the perpetrator was. No one could identify Mr. Wagner from these videos. No proceeds from these burglaries were recovered from Mr. Wagner. There was no forensic evidence tying Mr. Wagner to any of these crimes. Mr. Wagner did not speak to anybody other than Detective Vanderbilt about this incident, and so really what we have here is circumstantial evidence that scanned at best, and we have an admission, a statement that was used against Mr. Wagner that was obtained illegally. And as a result, Mr. Wagner was prejudiced. So under the Strickland test, counsel was ineffective. Now, compounding this error, there was counsel's ineffectiveness again when counsel failed to object to statements, to testimony, I'm sorry, to testimony that was given by witnesses regarding the contents of the videos that were presented at trial. The court allowed the state to produce testimony where these witnesses narrated the contents of the video, even though they were not present, and made crucial conclusions about what was depicted on the video when they were in no better position than the jury to make, to reach these conclusions. What were the crucial conclusions? So the, I would say that the most prejudicial testimony that came was from Officer Mueller. Officer Mueller testified that the man that was depicted in the Hy-Vee video, this was the parking lot, I'm not sure what Hy-Vee is, it's a supermarket, but it's a big parking lot where the stolen car is later found. And he stated that the man depicted in that video was wearing the same clothes, and these were his words, the same clothes, as the individual that was depicted in the Starquest video. And he also testified when he was describing and narrating the Starquest video, he also testified that the individual there was wearing a Carhartt jacket. This is a very, this is a brand, a very specific brand of jackets, and... Did he say a Carhartt jacket or a Carhartt-like jacket? I believe he said he was a Carhartt jacket, and I believe he explained that he could tell because this type of jacket has a particular logo. Has a different logo on it. Yes. That looked like a Carhartt logo. Right, I mean, he said it was, he could tell that he was wearing a Carhartt jacket based on the logo. Now, whether it was or was not, I think that was for the jury to decide, and I think that this testimony that was given invaded the province of the jury in determining whether in fact this was a Carhartt jacket or not. Is that all visible to the jurors in the video? Well, your honors obviously have this video available to you. I would suggest that it's hard to tell whether it is a Carhartt jacket or not. I can, I also can say that I'm not necessarily that familiar with this type of jacket. So, I mean, without that, I don't know how familiar the officer was with the, you know, I don't know, that testimony was never presented. But what I can say is your honors can look for yourselves and see whether or not, what can tell what type of jacket it is from the video. And also to say that it was the same jacket that the person in the Hy-Vee video was wearing was extremely prejudicial because in that particular video, you really can't even see what the individual is wearing. Counsel, is there contemporaneous objections each time testimony such as that is offered? Unfortunately, your honor, there was no objection to this testimony, and that's why I'm arguing that this was part of counsel's ineffectiveness in this case. There was some objection to the time frame, to some of the testimony establishing what time these videos were taken. But there was no objection with respect to the conclusions that these witnesses had come to with respect to what was depicted on the video. Counsel, can I just ask, following up on that, how could witness Officer Mueller testify while viewing the video? What could have counsel done to use that testimony to further its case, the prosecutor? I'm sorry, can you repeat the question, please? Well, if the proper foundation is laid, I'll ask a different question. If the foundation is laid and it's proper, can a prosecutor use this type of testimony with a lay witness to set the scene, to show or discuss what they did know about the area, perhaps the Hy-Vee parking lot, things of that nature? I want to get a sense of what your understanding is of how this type of testimony is used because it's used all the time. Yes, Your Honor, and there are some types of testimony that are admissible and relevant and helpful to the jury. For example, obviously there's testimony with regards to the authenticity of the exhibit and perhaps whether or not the camera was working properly or not. There's also testimony, for example, if the witness is familiar with the space in the area and it is not necessarily clear from the video where the person is exactly with respect to other places that are shown in the video, I think that that testimony is relevant. But it's only relevant because it's helpful to the jury and the witness has some knowledge that is additional to what the jury is viewing at the time. And my position here is that none of these witnesses were in a better position than the jury to evaluate this evidence and to make the determinations that the officers made for them. For example, none of the witnesses were there, the officers were not familiar with the area, and the clothing that was recovered from Mr. Wagner was presented to the jury. Not just photographs, but the actual jacket and the actual shoes. So the jury had an opportunity to really evaluate this evidence, perhaps even longer than the officers. What's the prejudice the defendant suffered in this case? I'm sorry? What's the prejudice the defendant suffered in this case? That is, this wasn't an identification case where the Supreme Court has spoken about that's not something that should occur. But here we have reference to clothing as opposed to a personal identification of the suspect and description of behaviors. What's the problem with that? Well, Your Honor, I'm assuming you're referring to people versus Thompson. Sure. And the... That was an identification saying that's the guy. But we don't have that here. We don't have that. And how is this... How prejudicial is this? Assuming maybe it's bad form. Let's assume it's bad form for the witness to be talking about what he sees and explaining it to the jury. But how prejudicial is this? And what is the prejudice? Well, it was very prejudicial in this case because although none of the witnesses said, yes, that is him, I can tell. There were two crucial questions here. The first question was, was it the same individual that perpetrated all of these crimes? And the second question is, was it Mr. Wagner and how do we connect this crime to Mr. Wagner? The way that the evidence was connected to him was through this similarity of clothing. This is how they were able to identify Mr. Wagner. And this consisted of the entire... This was the entire state case. It was simply these connections that were made by these witnesses. Now, I would also like to note that, for example, in one of the videos, which is the one with the ATM machine, that the... Apparently he backed up the car against the ATM machine. In that video, you can't even tell what this person is wearing, if it's a man or a woman. All you can see is a sleeve. And the video where... But there, isn't the evidence more focused on the damage on the vehicle than the damage on the ATM machine? That's correct, Your Honor. However, it was the testimony of the officers that the same suspect had committed all of these crimes. And also, even though I said I would not discuss Argument 3, in Argument 3, I talk about the discrepancy in the time frame, which would have made it impossible for Mr. Wagner to be the individual who stole the car. I know you're talking about 7.15 versus around 7.30. Versus around 7.30, which is not just around 7.30, but it's the fact that Mrs. Clough, who came out of the instant replay, also testified that she came out at 7.30 and the car was already gone. So, given that testimony, Mr. Wagner could not have stolen that car. Yet, because the officers told the jury it's the same person in all of these videos, they were able to convict him, not only with regards to the criminal destruction of property, but also with respect to all of the other crimes that he was charged with. So there was significant prejudice in this case, and counsel was ineffective for failing to object to this evidence. Can I go back for a moment, please, and ask the question with regard to the lay witness theory? If the video is coming into evidence and the clothes are coming into evidence, couldn't it be trial strategy that the defense attorney did not object, understanding that they were both coming in anyway? You're almost drawing more attention to the fact that the matching clothes in the video, you're almost drawing attention to it, is what I'm trying to say. I understand, although I do believe that counsel only needed to object once, because once the state attorney asked the first officer, well, tell us what you see in this video, counsel could have objected, and outside the view of the jury, there could have been some argument regarding what the limitations would be with respect to this testimony, outside the presence of the jury, and then once that was determined, then there would have been some guidance as to what the other officers were testifying to. Because it's not just that one officer testified to this, it's that they were all in agreement, and they all testified to this. And whether we like it or not, juries do give more weight to the testimony of police officers and the work that they are doing. So counsel needed to only object once, and I think the court could have limited the testimony, and it wouldn't have been as prejudicial. And if this court does not want to look at it under the ineffective assistance of counsel, I also argued that this could be looked at as plain error. You know, as I explained before, the evidence was not overwhelming. The evidence here was close. And so this can also be looked at as plain error under the first problem. Now, another error by counsel here was during sentencing. So Mr. Wagner was also denied a fair sentencing hearing. He was sentenced as a Class X offender, and that was based on a felony conviction here in the state of Illinois and a felony conviction, a burglary conviction from Maryland. There was no evidence in the record, and the state did not produce any evidence that would have allowed the court to determine whether the elements of the Maryland burglary statute were the same or equivalent to a Class II felony or above here in Illinois. Now, again, counsel failed to object to this. In fact, didn't he say affirmatively that his client was subject to Class X sentencing? I don't recall if she said that affirmatively, but there was never, never an objection to this. I believe it was mentioned before the trial. Is this something of which judicial notice could be taken? After all, we're talking about a Maryland statute. He's been convicted under this Maryland statute. Could the trial court or counsel or this court or someone now say, does the statute have the necessary elements to fit? Well, unfortunately, Your Honor, it does not even say what statute. It's the one that was part of that burglary conviction in the PSI. There's not even that bit of evidence. And I think that what's important here is that, I mean, I agree that at some point, somebody should be able to make this determination, and that's why I'm asking that this case be remanded so that this determination can be made. But the issue here is that in order to sentence him to a 20-year sentence, when the maximum sentence would have been seven years, the court had to make that finding. Did the defendant contest the Maryland conviction? No, Your Honor, but the reality is I'm not sure that Mr. Wagner was even aware that there had to be a showing of the elements, that the elements of the Maryland conviction would match the elements of a Class II felony here in Illinois. There are several degrees of burglary in Maryland. Without knowing which one it is, we can't really tell whether that's the case. So I don't know if Mr. Wagner even knew that that was even an issue. You don't think that the guy being sentenced wouldn't think that it may be significant whether he's going to be subject to Class X sentencing or not? I'm sure he was probably very upset that he was going to be sentenced to 20 years for something that would only carry a seven-year sentence, yes. I don't know that with his level of education or his sophistication that he would have been able to say, well, you know, under the statute, you're required to do this. And, you know, in reality, what I was convicted of was X, Y, and Z. I do see that my time is up. Thank you, counsel. Thank you. You have an opportunity to address this again in rebuttal. Thank you. Okay. Mr. Manchin. Afternoon, Your Honors. May it please the court. Counsel. Counsel. I will address the question of the videotape first. That one cannot be argued as plain error. In this case, defense counsel himself cross-examined each of the state's witnesses regarding what they saw on the videotape and used their answers affirmatively in his own defense. So the defendant is now saying evidence that I used and allowed to be admitted should not have been admitted. So under the theory of invited error, plain error simply cannot apply. So I want to make sure my understanding is clear. He had not objected to any of this use before he cross-examined these officers and used it as. . . No, there is no. . . What I'm trying to get at is your posture would be different if he sought to keep out this evidence, his efforts were thwarted, and then he used it in a fashion to make his best use of it as he could. That's correct. That's how it happened. But he did not make any objections at all. He did not even. . . I do not even believe he made any objections regarding the time frame as far as the disability or anything like that. Okay. He allowed the testimony to come in without objection and then proceeded to cross-examine the witnesses himself as to what they saw on the tape to emphasize that, hey, whatever's happening here, you cannot make any identification of anybody on this tape, to use the tapes affirmatively to say, hey, these tapes don't prove anything. So for the defendant to now be saying that this is plain error when it's invited and that counsel's decision to use this error, this testimony affirmatively, amounts to ineffective assistance of counsel. This all boils down to a matter of judgment and strategy, and this court has to presume that it's a matter of reasonable strategy and that presumption is overcome only if no reasonable attorney were to take this approach. And a mistake in strategy cannot be ineffective assistance unless it amounts to no representation at all. And that standard simply does not apply either with regard to the videotape or with regard to the defendant's statement to the police. The law regarding videotape narration is that it's within the discretion of the trial court. If it's helpful to the standards, basically, will this testimony be helpful to the jury? And I submit that the decision here would have been, yes, this would be helpful. Some of these tapes, particularly the parking lot tape, you could, without somebody telling you, okay, right here is what's happening, you won't know what to look for on the video. So as far as that goes, I think the trial court's decision, had an objection been made, the defense counsel would not have been successful in keeping this out. And as this court points out in the- Excuse me, did the defendant testify at trial? Yes, he did. He testified consistent. In his statement to the police, he told the police, I parked my car at this location and then went and smoked, did drugs with somebody. At trial, he testified, I parked my car here and went with this lady and we drank. I lied to the police when I mentioned drugs, that's what the police told me to say. So his trial testimony was in line with his pretrial statement, but inconsistent with it. Well, the reason I ask that is you mentioned in your brief how the defendant's trial counsel might have declined to file a motion to suppress as a matter of strategy because there was some exculpatory information in that statement that maybe it was thought to be desirable to get that before the jury, but the defendant testifies, why would that- Well, at the start, when the testimony was presented, the decision may or may not have been made whether or not the defendant was in fact going to testify, and counsel may have been hoping that he could convince the defendant not to testify. Well, we don't know any of that. We don't know that, which is why I argue in my brief that this would be better addressed in a post-conviction petition where we can determine what exactly were you thinking when you did not object to the statement, which says, yes, I parked my car there, but I was off elsewhere during the time, the frame of the crime, which while it doesn't say I was at 3rd and Madison, it is in the nature of an alibi saying I was off doing drugs with somebody at the time all these crimes were happening and could not have committed them. What about on the merits, Mr. Manchin, regarding whether or not he, having been arrested, having counsel pointed on some of these charges, that he shouldn't have been interrogated by the officer or anyone? Well, in the Patterson case, the Supreme Court says that a Miranda warning is pretty sufficient to allay any Sixth Amendment counsel problems whenever the defendant is questioned after appointment of counsel. So under Patterson, it's questionable whether or not counsel would have succeeded in any kind of objection. Plus you have the fact that in Patterson, the United Supreme Court said that the Miranda warnings could be sufficient to alleviate any Sixth Amendment right to counsel problem that arises when the defendant is questioned after counsel has been appointed. Well, so he shows up and he gave him the Miranda rights? Correct. And the defendant said, I don't want to talk to you? No, he says... First, did he say, I don't want to talk to you? Uh... And then the cop says, okay, I'm going to go fill out these new citations? Was that the sequence or did he get that confused? I do not recall that. My recollection was that he gave him the warnings and the defendant agreed to talk. I do not recall him refusing and the cop saying, okay, we'll bring other charges then. I do not recall that. It's been a while since I've seen the records. Your recollection may be better than mine, but I do not recall that. All I recall is the defendant being given the warnings and agreeing to speak. Like I said, with regard to this statement to the police, it does boil down to a matter of judgment. Plus, you have the defendant testifying, which would alleviate any possible prejudice from it because the jury would hear basically the same information. Once the defendant testified and his testimony was contrary to what he had said in his prior statement, the prior statement could come in both as impeachment and as substantive evidence under 725 ILCS 5115-10.1 because it was a statement written and signed by the defendant. Whose statement was this? This was the defendant's statement. It was written. The defendant's statements are always admissible. But I'm just saying that the defendant in her brief suggests that this statement could only be used for impeachment purposes. And I'm saying that's what the defendant argues. It was prejudicial to the defendant in that it could only be considered as impeachment. It could not be considered as substantive evidence so that the harm is still there even though he had testified. When it's presented after the defendant testifies, it can only be used as impeachment. That's their argument on appeal in their reply brief. And even under 115.4.1, as a signed statement, regardless of who said it, it would come in as substantive evidence. The whole thing is a strange argument because 115-10.1 doesn't apply to defendants because their statements are always admissible substantively, period. That's correct. I'm just pointing out that regardless of who said it, it would be admissible as substantive evidence after the defendant testified so that any prejudices to this defendant from the presentation of his or the claim of ineffectiveness fails because of the lack of prejudice. Because even if you objected and gotten it excluded, once the defendant testified, the statement could come in. Let's go to the sentencing thing. I'm not sure I understand. I'm not sure I understand defense counsel's argument either. He's convicted of a deemed a class X felon because of relying in part on the Maryland burglary conviction? Yes, correct. Now, doesn't Illinois law require that for that use there must be something presented to a trial judge to demonstrate that it fits the statute, this conviction, if it's not of court? Yes, but there's a problem with that. The problem is that case dealt with the time factor, as I recall. I wrote a decision in People v. Shelton, cited in the proving led by the Supreme Court in People v. Levin in 2012, saying, you know, you've got to demonstrate that this is the same case, that these elements, they fit. And no one talks about Shelton or these other cases, and I'm wondering what's going on. And how can, if no one talked about it, and we still don't know, as we sit here, maybe it's something we should notice, but I guess we'd have to have the indictment of whatever he was convicted of. Maybe there are multiple aspects of it. How can we be confident that this guy is sentenced as a class X felon when the Maryland statute fits? Well, in the way the defendant phrases this issue is that it was counsel, defense counsel, was ineffective. In order for you to find ineffective assistance, you have to make several assumptions. One, that he did not investigate the, you have to assume that there's some basis for him to object to the consideration of the Maryland. You're right, Mr. Manchin, that is, it's entirely possible that what could have happened is defense counsel got a hold of his PSI, where reference was made to this burglary conviction, and looked into it and satisfied himself, yeah, this fits, and therefore I was not going to make any other reference to it. And that would be a little embarrassing if that were, we were to remand for further proceedings and that were to be what the further proceedings reveal. On the other hand, it's a little troubling because it seems to me the more appropriate course of action for defense counsel in that situation is to say, Judge, by the way, I checked, and I just want you to know that this Maryland statute does fit. As a matter of fact, he did concede that, didn't he, or was that a fact? I believe, yeah, there was a concession, there was a concession that the defendant was eligible for. Well, it would have been adding that sentence or two, and the reason I'm conceding he's eligible is because the Maryland statute fits as required by the sentencing statute in Illinois for it to be deemed a prior Class II or greater conviction. But we don't have that, do we? No, we don't. What we have here is everybody agreeing with the defendant's statement that the defendant is eligible, that the contents of the pre-sentence report are correct and accurate, and that the defendant was eligible for the extended term sentencing. The claim is that the trial court could not rely upon the contents of the pre-sentence report, that the trial court was required as a matter of law to have extrinsic evidence presented of the Maryland case. I think that's what I wrote, Michelle. That is, Williams dealt with the time factor. Williams didn't address the elements factor at all. I have to go back and check again, but I thought, and then Ms. Hernandez doesn't address it either, but I thought People v. Levin, where the Supreme Court addressed the subject, cited the Shelton decision approvingly. Well, in People v. Stewart and Riviera, which are cited in my brief, they're virtually identical to this case, wherein the defendant says that you cannot rely upon the contents of the pre-sentence report and extrinsic evidence of the qualifications required. And under those cases, that there's simply no basis to remand here, where no objection was made, where the defendant expressly waived any filing of a motion to reconsider sentence and demanded a notice of appeal be filed in stanter, and where everybody in the courtroom agreed that the defendant was eligible to now say, okay, we're going to go back and do it again because we're not sure that we did it right the first time is what it boils down to. Well, he got a 20-year sentence based upon his being sentenced as a Class X offender. If he weren't sentenced as a Class X offender, what's the sentencing range he'd be subject to? I believe it's seven years. That's pretty significant. Given that the record is silent, how can we be confident that this was properly imposed? I think you have to take the parties at the word at the hearing that the pre-sentence report says he's got this conviction. As I read the Maryland statutes, there are four degrees, and only one of them would not qualify as a felony under Illinois statute, and that was a misdemeanor, and as I recall, the pre-sentence report said that he was convicted of a felony in Maryland. So that that fourth one that would not apply as a felony in Illinois, on the face of the record, would not apply. Okay, I see I'm out of time, so are there no further questions?  Thank you, Your Honor. Thank you, Counsel. Ms. Hernandez? Thank you, Your Honor. I have a few points I would like to make. First, I would like to clarify some of the statements that counsel made with respect to the record and what the testimony was at trial. With respect to Mr. Wagner's testimony, Mr. Wagner actually did deny that he was the individual depicted on the videos and that he was the individual that had perpetrated any of these crimes. Counsel says that, you know, that his testimony... How did his testimony differ from his statement to the police? It was very different, Your Honor. His testimony at trial was that, first of all, that the statement that he had made to the police was not true, that the officer told him what to say and what to write. Second, he said that he had lied about meeting up with a friend, using drugs. He said that he did not remember parking at the Hy-Vee parking lot, and he claimed that it was not him on that video. Is that... And I... How did it differ from his statement? Did the statement to the police, did he address those two things? Yes, Your Honor. As I said, when he was questioned about the statement that he made to the police, he said that he had lied to the police. But not about everything, did he? Or what did he... Those last two points in particular you just made, did he say that was a lie or did he testify similar to that? No, it was not similar at all. He said that he had taken his car, that he had gone to a cemetery, I believe, that he was drunk, that he had dropped off his daughter at her grandmother's, then had gone to the cemetery, and then after that, he had gone home and parked his car, and that he was at home. So the testimony was very different. He said he denied that he walked out of his car after he had parked it at the Hy-Vee parking lot and then walked north towards the K-Mart, which was specifically what was depicted on the video. He said that he wrote what the officer told him to write, which was what was apparently on the video. So in his statement, he didn't say anything about walking to the Walmart parking lot? You mean K-Mart? Yes. And you mean at the testimony at trial? Yes. The testimony at trial was that he did not park his car and walk towards the K-Mart, but that information was given to him by the officer. Is my recollection correct that the officer talked to him after he was arrested and said, I want to talk to you about these other matters, after he had been arrested and counsel appointed? Yes, Your Honor. Your recollection was correct that the officer came to him, told him, I can talk to you about these three other matters because you haven't been charged, read him his Miranda rights. Your recollection was also right that Mr. Wagner actually did request an attorney at that time. And the officer said, okay, I'm leaving. Well, it was not very specific. So I'm going to go and then run up these three citations. Yes, that's what he said. He said he was going to write up the three citations. And the defendant says, wait a minute, I want to talk to you. Yes, however. And the officer then says, wait a minute, I can't talk to you because you've already asked for a lawyer. Yes, but I also want to point to you People v. Kidd, which says that once counsel has been appointed, Miranda warnings are not sufficient to protect the defendant against Sixth Amendment violations. And this is a different case from Patterson because in Patterson, counsel had not been appointed yet. It was the defendant had simply been indicted at that point. Here it's very different. And I submit that Miranda warnings were not sufficient here to protect the defendant because counsel had already been appointed and he was misled. On one case. On one case, which was connected to these other counts that were coming in, whether he made a statement or not. How connected did they have to be? Well, they were in the same. That is, if he had been arrested for burglary and the cops wanted to talk to him about a murder case, could they have done that? Well, I think the question is how they're using the statements and if they're using the statements. Well, no, that's not the question. You're the cop. He's been arrested in burglary, charged with burglary, court appointed counsel on burglary. You now suspect him on a murder case. Can you talk to him? Well, it depends on how disconnected this murder case is from the burglary. Yes. But let's say I start asking him questions about the murder and because somehow there is some connection, even if it's a faint connection, I obtain statements that I then use against him in his burglary case. Which they didn't hear. Which, I'm sorry? They didn't hear. He didn't give any statements before he says, I want to talk to a lawyer. That's correct. He did not. Okay. And then the only statements that he did give that were of an incriminating nature, if at all, they're actually more expulsory, came after he says, no, wait a minute, I want to talk to you. The officer says, no, you've already said you want a lawyer. And he says, no, I want to talk to you about this. Well, I don't know how insistent he was. That was not very clear. Well, the sequence is correct, isn't it? The sequence is correct. He makes a statement after he says he wants an attorney and then changes his mind. And after being, again, told by the officer, wait a minute, I can't talk to you anymore, you've already asked for a lawyer. I'm not sure that the officer ever said that to him or that it was even established. I don't know that that question was asked. But I do want to make the point that here, Miranda warnings were not sufficient because the detective had already made a determination here that it was the same suspect. Moreover, the statement is with respect to all of these crimes because the parking lot, the Hy-Vee parking lot, was very specific to the time frame that connected all of these crimes together. So these were charges that were closely related, that were closely related, they were part of the same indictment. But the statements were all exculpatory, weren't they? Yeah, I did park at the Hy-Vee. That's where I park. That coat and those shoes I leave in my car. I don't lock my car because I open it with a pad and a lot of people know what that pad number is. I'm a little bit confused. That was the testimony at trial, is that what you're referring to? No, that was what he said. He didn't say that to the police. All that he said to the police was, I parked my car at this Hy-Vee parking lot, I walked north towards Kmart, I had my friend, all I remember is waking up in a motel room and being sick. I don't remember anything about that night. That was the statement that he made to the police. Okay, all right. Yes, okay, so we're clear. I took up a lot of your time. You're out of time, but I'm going to give you a minute to finish, so go ahead. Okay, thank you, thank you, because I do want to point some other things out. I do want to disagree with Your Honor when you say that statements made by defendants are always admissible because statements made by a defendant in violation of his constitutional rights are not admissible. Oh, well, sure, but as a matter of evidence law, if they're not in violation of his constitutional rights, they're always admissible. But they were here. They were in violation of his constitutional rights, so they were not admissible. And even if they are admissible, they would only come in as impeachment testimony. There are circumstances. No, statements of the defendant are always admissible substantively when offered by the state. Unless they were obtained illegally by the state. Well, of course. If they're not obtained illegally, you don't have to worry about impeachment. They can come in substantively. Right, right, and there are certain circumstances in which if the statement is obtained illegally to the extent where it is determined that the statement was coerced, the statement doesn't come in at all. Okay. So I would like to point that out. And as to the third, if I may have. Go ahead. Thank you. As to the third argument, the argument related to his classification as a Class X offender, I, you know, counsel mentioned People v. Rivera to say that the PSI is sufficient. However, in People v. Rivera, the court made a very specific distinction between what your Honor mentioned, which is, is this about when the crime occurred or what the nature and the elements of these crimes are? Okay. So I thank you for your attention. Thank you, counsel. We'll take this moment and advise him to be in recess for a few minutes.